FARMERS' & LABORERS' CO-OPERATIVE INSURANCE ASSOCIATION OF AUDRAIN COUNTY, MISSOURI, PLAINTIFF, v. BANK OF CENTRALIA, AND S. L. CANTLEY, COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI, RESPONDENTS, AND JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—56 S. W. (2d) 606.

St. Louis Court of Appeals.   Opinion filed February 7, 1933.

*Eugene E. Bowers* and *Joseph M. Bone, Jr.*, for appellant.

1070

*Fry, Hollingsworth & Francis* for respondent.

SUTTON, C.—This action was instituted in the Circuit Court of Audrain County, on August 27, 1931, by bill of interpleader.

The defendant Bank of Centralia was, at the time the bill of interpleader was filed, and has been since March 22, 1930, in process of liquidation, in charge of S. L. Cantley as Commissioner of Finance.

On June 11, 1931, a barn on a farm in Audrain County, owned by defendant Bank of Centralia, subject to a deed of trust held by defendant John Hancock Mutual Life Insurance Company, was destroyed by fire. The plaintiff, Farmers' and Laborers' Co-operative Insurance Association, carried a fire insurance policy on said barn and other buildings, which policy of insurance was in full force and effect at the time of the fire. The amount of the loss resulting from the destruction of the barn by fire, as agreed upon by the parties, was

$1400. The defendant Bank of Centralia and the defendant John Hancock Mutual Life Insurance Company each made claim to the proceeds of the policy. Thereupon the plaintiff, Farmers and Laborers' Co-operative Insurance Association, filed its bill of interpleader. Plaintiff, pursuant to the court's order, paid into court $1400, the proceeds of the policy, and was discharged. Defendants interpleaded for the fund thus paid into court.

Upon the trial the court found the issues in favor of defendant, Bank of Centralia, and gave judgment directing the fund to be paid over to said bank. From this judgment the defendant John Hancock Mutual Life Insurance Company has appealed to this court.

The farm upon which the barn destroyed by fire was located was formerly owned by Thurman Chapman, subject to a first deed of trust given by Chapman and his wife to the Maxwell Investment Company to secure the payment of their promissory note in the sum of $5,000, under date of January 1, 1920. Said note and deed of trust were assigned by the Maxwell Investment Company to defendant John Hancock Mutual Life Insurance Company, on May 7, 1920.

This deed of trust expressly provided that the mortgagor was not required to keep the improvements on the farm insured against loss by fire.

On September 6, 1921, Chapman gave a second deed of trust on said farm to J. T. Mitchell to secure the payment of his promissory note for $2500. This second deed of trust was foreclosed on July 21, 1928, and R. P. Price, then the president of defendant Bank of Centralia, became the record purchaser thereof, subject, of course, to said first deed of trust held by defendant Hancock Company.

On the 13th day of August, 1928, R. P. Price, still the record owner of said farm, obtained from the Farmers' and Laborers' Co-operative Insurance Association the policy of insurance here involved. This policy of insurance was made payable to R. P. Price, there being no clause in the policy making the same payable to the mortgagee.

On March 16, 1929, R. P. Price, for a recited consideration of $1,000, conveyed the farm to defendant Bank of Centralia. The deed conveying the farm to the bank was duly recorded in the office of the Recorder of Deeds in Audrain County, on March 19, 1929. The bank acquired the farm subject to, but did not assume, the first deed of trust held by the Hancock Company. When the Commissioner of Finance took charge of the bank, in March, 1930, he found the deed from R. P. Price and the policy of insurance among the papers of the bank. From the time the Commissioner took charge of the bank up to and beyond the time of the fire, he paid the premium assessments made by the insurance association. The first of these assess-

ments was issued to and in the name of R. P. Price, who delivered it over to the Commissioner for payment. The Commissioner called the attention of the secretary of the insurance association to the fact that the Bank of Centralia was then the owner of the farm, and the assessments were thereafter made against the bank and were paid by the bank.

On July 13, 1931, after the fire, the insurance association, through its secretary, after inspection of the insured premises, reduced the amount of the insurance carried on the premises and notified the bank as the holder of the insurance of such reduction.

The Hancock Company offered evidence tending to prove that both the bank and Chapman were insolvent at the time the bank was placed in charge of the Finance Commissioner for liquidation; that at the time of the fire the value of the farm with the barn on it was less than the indebtedness secured by the first deed of trust; and that the destruction of the barn by fire reduced the value of the farm about $800.

The appellant contends that it is entitled to the proceeds of the policy of insurance because the value of the farm covered by its mortgage is insufficient to pay the mortgage indebtedness.

It is settled law in this State, and elsewhere as well, that the mortgagor and the mortgagee each has an insurable interest in the mortgaged premises, and insurance taken by one on his own interest and in his own favor alone does not inure to the benefit of the other. Where the mortgagor insures his own interest and pays the premium, and there is no covenant in the mortgage requiring him to insure for the benefit of the mortgagee, and the loss is not made payable to the mortgagee, the mortgagor is, notwithstanding the mortgage, entitled to the full amount of the loss, for the whole loss is his own, and the mortgagee has no right or claim to the proceeds of the insurance. Conversely the mortgagor has no right or claim to the proceeds of insurance taken out by the mortgagee on his own interest. [Dick v. Franklin Fire Insurance Co., 10 Mo. App. 376; Id., 81 Mo. 103; McDowell v. Morath, 64 Mo. App. 290, l. c. 297; Vogelstein v. Athletic Mining Co. (Mo. App.), 192 S. W. 760; Thomas v. American Automobile Underwriters' Agency (Mo. App.), 5 S. W. (2d) 660; Julian v. Davis, 214 Mo. App. 525, 259 S. W. 142; Millard v. Beaumont, 194 Mo. App. 69, 185 S. W. 547.]

Appellant urges in argument that there was no assignment to the bank of the policy taken out by R. P. Price on his interest in the mortgaged property, and that, therefore, the bank, being a stranger to the policy, is not entitled to the proceeds arising therefrom. If this were so, we are unable to see how it would aid the appellant in its claim to the proceeds. However, the evidence clearly shows an assignment of the policy by Price to the bank with the full knowl-

edge and assent of the insurer. The policy was delivered to the bank along with the deed. Thereafter, the bank paid the premiums on the policy to the insurer. The premiums were accepted by the insurer with full knowledge that the policy had been transferred to the bank by Price along with his interest in the property, and afterwards, both before and after the fire, recognized and treated the bank as the insured under the policy. This was as effectual an assignment of the policy as if the assignment had been set down in writing and signed by the parties.

The appellant further insists that it is entitled to the proceeds of the policy because both the bank and the mortgagor are insolvent and unable to pay the mortgage indebtedness. We are unable to see how this fact entitles the appellant to the proceeds of the policy, which was carried and paid for by the bank for its own protection. How is the bank concerned with the payment of the mortgage indebtedness? It does not owe the mortgage indebtedness. It did not assume such indebtedness, and is under no obligations to pay it.

There is no equity in appellant's claim. It lost nothing by the destruction of the barn that it would not have lost if the policy carried and paid for by the bank had never been issued. It had a right to take out and pay for insurance on its own insurable interest in the property, or to require the mortgagor to provide such insurance, to protect itself against the insufficiency of the security and the insolvency of the mortgagor. Because it did not see fit to thus provide for its own protection it now claims the right to take from the bank the proceeds of insurance carried by the bank at its own expense for its own protection. We know of no principle of equity that may be invoked to achieve this end.

The appellant contends, as a further ground for the reversal of the judgment below, that the court, having made no order requiring the claimants to interplead, was, therefore, without jurisdiction of the subject-matter. There is no substance in this contention. Upon the hearing of the bill of interpleader the fund in dispute was ordered paid into court. This was done, and plaintiff was discharged. The claimants appeared and interpleaded for the fund, tried the cause, and submitted the issues in controversy. It is clear that the court thus obtained complete jurisdiction of both the subject-matter and the parties.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed: *Becker, P. J.,* and *Kane* and *McCullen, JJ.;* concur.