642 F.Supp. 535 (1986)
UNITED STATES of America, Plaintiff,
v.
AID INSURANCE COMPANY, Defendant,
v.
James H. JACOBY and Pency S. Jacoby, Third-Party Defendants.
No. 84-2325 C (5).
United States District Court, E.D. Missouri, E.D.
July 8, 1986.
Jill S. Newman, Joseph Moore, Asst. U.S. Attys., St. Louis, Mo., for plaintiff.
Leritz & Reinert, Joseph L. Leritz, St. Louis, Mo., for defendant.

*536 MEMORANDUM
LIMBAUGH, District Judge.
This civil case arises out of the destruction by fire of a home owned by James H. Jacoby and Pency S. Jacoby in Chariton County, Missouri, on June 12, 1982. Plaintiff United States of America, on behalf of the Farmers Home Administration, Department of Agriculture (FmHA) seeks damages in the amount of Thirteen Thousand and no/100 Dollars ($13,000.00) from defendant Aid Insurance Company (Aid). The FmHA holds a second deed of trust on the Jacoby property to secure a note executed by the Jacobys. Aid insured the Jacoby property at the time of the fire and, notwithstanding notice of the government's deed of trust, did not pay any of the insurance proceeds to the FmHA. Defendant Aid denies that the FmHA has a right to any of the proceeds from the Jacobys' policy. It has also impleaded the Jacobys in a third-party action, contending that they must reimburse it to the extent of its liability to the plaintiff, if any.
Plaintiff United States and defendant Aid Insurance have submitted post-trial proposed findings of fact and conclusions of law. The Jacobys appeared at trial pro se, and have not made a post-trial submission. This Memorandum constitutes the Court's findings of fact and conclusions of law for purposes of Fed.R.Civ.P. 52(a).

Findings of Fact
James H. Jacoby and Pency S. Jacoby purchased land in Chariton County, Missouri, from Francis L. Mordecai and Betty A. Mordecai in 1975. As security for the promissory note they executed in payment for the land, the Jacobys gave the Mordecais a first deed of trust on the purchased property dated May 6, 1975. In July, 1981, the Jacobys borrowed money from the FmHA, and gave that agency a second deed of trust on the Chariton County property. The deed of trust held by the FmHA was subject to the prior deed of trust held by the Mordecais.
To protect the property and secure their interests, the Jacobys purchased a standard fire insurance policy from State Farm Fire and Casualty Company, effective from May 10, 1981, until May 10, 1982. Although the Jacobys never received a complete copy of the State Farm policy, a Memorandum of Insurance they received lists the Mordecais and the FHA (sic) as first and second mortgagees of the insured property. On March 31, 1982, the Jacobys received a letter from State Farm, informing them that it would not renew their policy. State Farm sent a copy of this letter to both mortgagees.
As State Farm declined to renew its policy, the Jacobys purchased the insurance policy that is the subject of this controversy from Aid Insurance on May 21, 1982. The Aid policy names the Mordecais, but not the FmHA, in the loss payable clause. The Jacobys did not list the FmHA as a mortgagee in either the application for insurance or the policy payment plan schedule.
The second deed of trust held by the FmHA specifies that the mortgagors (Jacobys) have a duty "to keep the property insured as required by and under insurance policies approved by the Government." Aid and the Jacobys claim the FmHA never required the Jacobys to obtain insurance to protect its interest. The FmHA claims that when it received notice that State Farm had cancelled the Jacobys' policy, Robert Hardwick, FmHA Chariton County Supervisor, sent a standard form letter to the Jacobys reminding them to obtain insurance on the property. However, the file kept by the FmHA at its Chariton County office in Keytesville, Missouri, contains neither a copy of this letter nor any indication that the office sent it. The Jacobys deny that they ever received a copy of the letter. Accordingly, the Court finds that the United States failed to prove by a preponderance of the evidence that the Jacobys received a letter directing them to obtain insurance coverage.
More generally, the government failed to prove that it ever notified the Jacobys that *537 they should obtain insurance coverage for its benefit. Robert Hardwick testified that between the time he learned of State Farm's cancellation and the date of the fire he attempted, without success, to contact the Jacobys about their duty to obtain insurance coverage on the property. But while these contentions, if true, demonstrate that Hardwick diligently pursued his duties, they have no legal significance as Hardwick was unsuccessful in his attempts to notify the Jacobys.
On June 12, 1982, a fire destroyed the main dwelling on the Jacoby property. The adjuster hired by Aid to investigate the fire learned of the FmHA mortgage and reported this information to the company. In settlement of the loss, Aid drew a check dated July 19, 1982, payable to James H. Jacoby, Francis Mordecai, and the Farmers Home Administration. Hamp Ford, the Jacobys' attorney, returned the check to Aid, along with an affidavit of the Jacobys stating that the FmHA never required them to procure insurance for that agency's benefit. In reliance on Ford's letter and the Jacobys' affidavit, Aid reissued the check on September 3, 1982, naming as payees only James H. Jacoby and Francis Mordecai.

Conclusions of Law
The Court has subject matter jurisdiction of this cause pursuant to 28 U.S.C. § 1345. Venue is proper in the Eastern District of Missouri. 28 U.S.C. § 1391(b).
A federal district court must apply state substantive law in non-diversity cases in the absence of a compelling federal interest. 19 C. Wright, A. Miller & M. Cooper, Federal Practice and Procedure, § 4515 at p. 275. The present controversy relates essentially to the common law rights of a mortgagee in the proceeds of an insurance policy procured by a mortgagor. Consequently, no compelling federal interest exists, and the Court must apply the law a Missouri state court would apply. Id.; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).
A Missouri state court would choose the law of the state with the most significant relationship to the present controversy, as determined in accordance with the principles of the Restatement (Second) of Conflicts of Law. Brown v. Brown, 678 S.W.2d 831, 833 (Mo.App.1984); State ex rel. Geil v. Corcoran, 623 S.W.2d 555, 556 (Mo.App.1981); and Nakao v. Nakao, 602 S.W.2d 223, 226-27 (Mo.App.1980). Restatement § 193 states that, in general, "the rights created [by a fire insurance policy] are determined by the local law of the state which the parties understood to be the principal location of the insured risk during the term of the policy." (parenthetical comment added). The policy in issue provided coverage for interests in property located in Missouri and, consequently, the Court will apply Missouri substantive law.
The Court must first determine what rights, if any, the FmHA as a mortgagee has in the proceeds of the Jacobys' insurance policy. Missouri law is well-settled as to this issue.
[t]he mortgagor and the mortgagee each has an insurable interest in the mortgaged premises, and insurance taken by one on his own interest and in his own favor alone does not inure to the benefit of the other. Where the mortgagor insures his own interest and pays the premium, and there is no covenant in the mortgage requiring him to insure for the benefit of the mortgagee, and the loss is not made payable to the mortgagee, the mortgagor is, notwithstanding the mortgagee, entitled to the full amount of the loss, for the whole loss is his own, and the mortgagee has no right to the proceeds of the insurance.
Farmers and Laborers' Co-op. Ins. Ass'n. of Audrain County v. Bank of Centralia, 227 Mo.App. 1068, 56 S.W.2d 606, 607 (1933); see also Browne v. Franklin Fire Ins. Co., 225 Mo.App. 665, 37 S.W.2d 977, 980 (1931). Every American jurisdiction follows this general rule. See Annot., 9 A.L.R.2d 300, 301-05; 46 C.J.S. Insurance § 1146; and 44 Am.Jur.2d Insurance §§ 1735 and 1736.
*538 The FmHA did not purchase the Aid policy, and the contract does not name the agency as a loss payee. The FmHA has an interest in the proceeds from the policy only if the Jacobys agreed to insure the property for the agency's benefit. Bank of Centralia, 56 S.W.2d at 607. The operative language in the deed of trust directs the Jacobys to obtain insurance on the burdened property "as required ... by the Government." The only document signed by the Jacobys, then, leaves open one of the crucial terms governing the parties' relationship. If the FmHA had subsequently notified the Jacobys of their duty to insure the property, they would have had a contractual duty to protect the agency's interests, and the government would have an equitable right to part of the insurance proceeds. Id. However, plaintiff failed to establish by a preponderance of the evidence that it ever required the Jacobys, either verbally or in writing, to obtain insurance for its benefit. Consequently, the FmHA has no right under Missouri law to any portion of the proceeds from the Aid policy.
Plaintiff contends that the Jacobys acted improperly by not naming it as a loss payee on the Aid policy and by using the insurance proceeds they received for inappropriate purposes. But, plaintiff did not name the Jacobys as defendants, and it does not purport to sue them on the promissory note it holds. The only liability they, as third-party defendants, could possibly have in this case would be a duty to indemnify Aid against any obligation the insurance company incurred in the main action. Since Aid has no liability to the FmHA, plaintiff's allegations concerning the Jacobys' inappropriate conduct have no relevance.
Further, FmHA Instruction 426.1, which the United States attached, unauthenticated, to its post-trial submission, undercuts its position. The government has submitted the instruction as proof that the Jacobys had a duty to purchase insurance coverage to protect the FmHA's interests. But, the instruction which, apparently, the FmHA sent at some undetermined time to its local agents, contemplates that county supervisors should ensure that borrowers procure insurance adequate to protect the government's interests. (e.g., "The County Supervisor is responsible for taking all actions in connection with insurance as may be necessary to protect the security interest of the FmHA"). Plaintiff does not contend that the Jacobys ever saw this document, and offers no legal theory by which the Court could constructively charge them with the information it contains.
While not a basis for the Court's decision, the evidence clearly demonstrates that any loss the government suffered resulted from its own actions, and not as a result of any fraudulent activity by the Jacobys. If the FmHA in its deed of trust had simply required the mortgagor to obtain insurance, rather than requiring it to obtain insurance as the government would at some indeterminate time direct, the FmHA would have fully protected its pecuniary interest in any insurance policy purchased by the mortgagors. In this connection, the Court notes that most private lending institutions include in their deeds of trust, as a matter of course, language which mandates the mortgagor to insure the premises secured and to include the mortgagee as the first loss payee. Most of these institutions even retain possession of the policy in their loan file.

ORDER
In accordance with the Memorandum filed today,
IT IS HEREBY ORDERED that judgment is entered in favor of defendant and against plaintiff on the merits as to all counts in the complaint.
IT IS FURTHER ORDERED that defendant may recover from plaintiff all appropriate costs of suit.
IT IS FURTHER ORDERED that the third-party complaint is DISMISSED.